# EXHIBIT N

**ConverDyn v. Moniz**
**Case No. 1:14-cv-1012-RBW**

**Exhibit to Plaintiff ConverDyn's Motion for a Preliminary Injunction**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONVERDYN,<br><br>    Plaintiff,<br><br>vs.<br><br>ERNEST J. MONIZ, in his official capacity as Secretary of the United States Department of Energy,<br><br>And<br><br>UNITED STATES DEPARTMENT OF ENERGY,<br><br>    Defendants. | Case No. 1:14-CV-1012-RBW |

## DECLARATION OF SCOTT MELBYE

I, Scott Melbye, do hereby declare as follows based on personal knowledge and belief:

1. I am the Executive Vice President of Uranium One and President of the Uranium Producers of America (UPA). The UPA was founded in 1985 to promote the viability of the domestic uranium industry. UPA's members include all current and most prospective uranium producers in the U.S.

2. Our domestic uranium industry is struggling to survive. The price of uranium is now at a level not seen since 2005, falling more than 60 percent since the Fukushima accident. As was demonstrated by DOE's own 2013 Uranium Marketing Annual Report, the current "all-in" cost of production is far in excess of the spot price for uranium of $29 per pound at the time of the May 15, 2014 Secretarial Determination. To put this into context, the U.S. uranium mines

are grouped around the 50th percentile on the worldwide production cost curve, meaning global competition with other mines is not an issue. From a human resources perspective, we have lost half our workforce since 2012, and additional difficult decisions lie ahead.

3.  Prior to the May 2014 Secretarial Determination, UPA and its members provided DOE with substantial information about the current state of the industry, demonstrating that DOE transfers would have an adverse material impact on the domestic industry. Although the Secretarial Determination acknowledges this input was provided, it does not appear to have been considered. Instead, the government's response was to dump more uranium into the market than our industry produces each year.

4.  The United States Government Accountability Office (GAO) issued a report in May 2014 entitled Enhanced Transparency Could Clarify Costs, Market Impact, Risk and Legal Authority to Conduct Future Uranium Transactions. (GAO-14-291.) GAO found several legal concerns related to DOE's conduct of recent uranium transfers. GAO also concluded that analyses supporting DOE's no-impact decisions failed to consider cumulative impacts of prior DOE transfers. Finally, GAO stated the analyses were incomplete and presented an overly simplified and imprecise view of the uranium market.

5.  Even the market analysis cited by DOE to support the May 2014 Secretarial Determination finds these transfers will drive down prices an additional 8 percent and lead to more job losses. It is interesting to note that even DOE's own contractor is no longer willing to claim these are not adverse impacts. That begs the question of how DOE's determination of no material adverse impact is made in the absence of supporting data, particularly since DOE acknowledges that it lacks the in-house expertise to assess market impacts.

6. In June 2013, DOE also abandoned a *consensus-based* cap on transfers—set at 10 percent of domestic utility requirements—without any input from the domestic uranium industry.

7. Halting or severely limiting DOE transfers in the short-term will reduce the adverse impact on the domestic uranium industry and ensure taxpayers receive a fair value for this asset when market prices recover.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 23rd day of June, 2014.

*/s/ Scott Melbye*
Scott Melbye
President
Uranium Producers of America