# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
CONVERDYN,                              )
                                                    )
                        Plaintiff,         )
                                                    )
        v.                                     )        Civil Action No. 14-1012 (RBW)
                                                    )
ERNEST J. MONIZ                        )
in his official capacity as Secretary of the   )
United States Department of Energy, et al.,   )
                                                    )
                        Defendants.    )
_____)

## MEMORANDUM OPINION

Plaintiff ConverDyn ("the plaintiff") brings this suit against the United States Department

of Energy ("the Department") and Ernest J. Moniz ("the Secretary"), in his official capacity as

Secretary of the Department, alleging that certain actions taken by the defendants violate the

United States Enrichment Corporation Privatization Act ("the Privatization Act"), 42 U.S.C. §

2297h–10 (2012), and are arbitrary and capricious under the Administrative Procedure Act

("APA"), 5 U.S.C. §§ 553, 706(2)(a) (2012).  See Complaint ("Compl.") ¶¶ 118–38.  Currently

pending before the Court is the defendants' Motion for Judgment on the Pleadings ("Defs.' Mot.

for J. on the Pleadings").  Upon careful consideration of the parties' submissions and the entire

record in this case, the Court concludes that it must grant in part and deny in part the defendants' motion.[1]

# I.   FACTUAL AND LEGAL BACKGROUND

## A.   Statutory Framework

"In 1996, Congress enacted the Privatization Act, which includes various provisions relating to the transfer of the [United States'] interest in the United States Enrichment Corporation, a government corporation previously established by the Energy Policy Act of 1992." ConverDyn v. Moniz, 68 F. Supp. 3d 34, 39 (D.D.C. 2014) (Walton, J.) (citation omitted). The Privatization Act "states that [t]he [defendants] shall not provide enrichment services or transfer or sell any uranium (including natural uranium concentrates, natural uranium hexafluoride, or enriched uranium in any form) to any person except as consistent with this section." Id. (citing 42 U.S.C. § 2297h–10(a)). One such exception provides that "the [defendants] may, from time to time, sell natural and low-enriched uranium (including low-enriched uranium derived from highly enriched uranium) from the Department['s] . . . stockpile." Id. (citing § 2297h–10(d)(1)). However, the Privatization Act prohibits the "sale or transfer of natural or low-enriched uranium" unless:

> (A) the President determines that the material is not necessary for national security needs,

---

[1]  In addition to the documents previously referenced, the Court considered the following submissions in reaching its decision: the defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Judgment on the Pleadings ("Defs.' Mem."); the defendants' Answer to Complaint; the plaintiffs' Motion for Summary Judgment ("Pl.'s Mot. for Summ. J."); the defendants' Memorandum in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Cross-Mot. & Opp'n"); the Court's May 11, 2015 Order; the plaintiff's Response to the Court's May 11, 2015 Order ("Pl.'s June 2, 2015 Resp. to the Ct.'s May 11, 2015 Order"); the defendants' June 10, 2015 Notice to the Court ("Defs.' June 10, 2015 Notice to the Ct."); the plaintiff's Memorandum in Opposition to the Defendants' Motion for Judgment on the Pleadings ("Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings"); the defendants' Reply Memorandum in Support of Motion for Judgment on the Pleadings ("Defs.' Reply in Support of Mot. for J. on the Pleadings"); and the Court's July 9, 2015 Order.

> (B) the Secretary determines that the sale of the material will not have an adverse material impact on the domestic uranium mining, conversion, or enrichment industry, taking into account the sales of uranium under the Russian [High Enriched Uranium] Agreement and the Suspension Agreement, and
>
> (C) the price paid to the Secretary will not be less than the fair market value of the material.

Id. at 39–40 (citing § 2297h–10(d)(2)).  Determinations under § 2297h–10(d)(2) "remain valid for two years only."  Id. at 40 (citations omitted).

**B.      The 2008 and 2013 Excess Uranium Inventory Management Plans**

In 2008, the Department issued a "document entitled United States Department of Energy Excess Uranium Inventory Management Plan dated December 16, 2008."  Id.[2]  The 2008 Policy "set[] forth the general framework within which the Department prudently [would] manage [and sell] its excess uranium inventory."  Id.  (citation omitted).  The 2008 Policy stated that "as a general matter, the introduction into the domestic market of uranium from Departmental inventories in amounts that do not exceed ten percent of the total annual fuel requirements of all licensed nuclear power plants should not have an adverse material impact on the domestic uranium industry."  Id. (citation omitted).  The 2008 Policy further stated that "[t]he Department anticipate[d] that it [might] introduce into the domestic market, in any given year, less than that amount, or, in some years for certain special purposes such as the provision of initial core loads for new reactors, more than that amount."  Id. (citation omitted).  This "Policy Statement" was not "published in the Federal Register or subject to notice and comment."  Id.

---

[2]  The Court refers to this document hereinafter as "the 2008 Policy."

"In July 2013, the Department transmitted to Congress a second Excess Uranium Inventory Management Plan . . . ." Id. at 41.[3]  The 2013 Policy "replace[d] the 2008 [Policy] and reflect[ed] updated and evolving information, programs, and mission needs, including additions to and deletions from the inventory and changes to [the Department's] uranium management strategy." Id. (last alteration in original) (citation omitted).  The 2013 Policy acknowledged the 2008 Policy's "reference to a Departmental guideline that, as a general matter, the introduction into the domestic market of uranium from Departmental inventories in amounts that do not exceed 10 percent of the total annual fuel requirements of all nuclear power plants should not have an adverse material impact on the domestic uranium mining, conversion, or enrichment industry." Id. (citation omitted).  However, the 2013 Policy repudiated this guideline, stating that "the Department . . . determined that it [could] meet its statutory and policy objectives in regard to [Department] uranium sales or transfers without an established guideline." Id. (citation omitted).  "Accordingly," the 2013 Policy added that "the 10 percent guideline [would] no longer be used." Id. at 42 (citation omitted).  As with the 2008 Policy, the 2013 Policy "was neither published in the Federal Register nor was it subject to notice and comment." Id.

## C.    The Current Litigation

Pursuant to § 2297h–10(d), in May 2014, the Department issued a "2014 Secretarial Determination finding no adverse material impact on the domestic uranium mining, conversion, and enrichment industry." Id. at 44.[4]  "The 2014 . . . Determination authorize[d] the transfer of up to 2,055 [metric tons of uranium] per year of natural uranium equivalent contained in natural

---

[3]  The Court refers to this document hereinafter as "the 2013 Policy."

[4]  The Court refers to the 2014 Secretarial Determination hereinafter as "the 2014 Determination."

uranium and natural uranium from off-specification non-uranium hexafluoride transferred to [Department] contractors for cleanup services at the Paducah or Portsmouth Gaseous Diffusions Plants and up to 650 [metric tons of uranium] per year of natural uranium equivalent contained in low-enriched uranium . . . transferred to [National Nuclear Security Administration] contractors for down-blending highly-enriched uranium to [low-enriched uranium] for [National Nuclear Security Administration] programs." Id. (some alterations in original) (citation omitted).

The plaintiff, who, according to the Complaint, "is the sole domestic supplier of uranium conversion services in the United States," ¶ 2, "filed suit on June 13, 2014, alleging that the Department [was] acting in excess of its statutory authority by transferring conversion services, that the 2014 . . . Determination's finding that the planned transfers [would] have no adverse material impact [was] arbitrary and capricious, and that the Department [would] receive less than fair market value for the planned transfers, in violation of the Privatization Act and the APA." ConverDyn, 68 F. Supp. 3d at 45 (citation omitted). The plaintiff also challenged the lawfulness of the 2013 Policy, alleging that it was "arbitrary and capricious, and otherwise not accordance with the law, in violation of the [APA]." Compl. ¶ 134. Then, "[o]n June 23, 2014, [the plaintiff] filed [a] motion for a preliminary injunction seeking to enjoin all of the transfers identified in the 2014 . . . Determination." ConverDyn, 68 F. Supp. 3d at 45 (citation omitted).

"The Court held oral argument on [the plaintiff's] motion [for a preliminary injunction] on July 29, 2014 and later that day, issued an order denying the motion for failure to show irreparable harm, with an indication that [an] opinion setting forth the Court's reasoning in full would be issued later." Id. (citation omitted).

On September 11, 2014, the plaintiff filed a motion for summary judgment. Pl.'s Mot. for Summ. J. In its motion, the plaintiff "move[d] for summary judgment to stop [the allegedly]

unlawful transfers of uranium from the . . . Department['s] . . . inventory into the commercial

markets." Id. at 1.  On the following day, September 12, 2014, the Court issued its

Memorandum Opinion ("Opinion") setting forth the "reasons" that it "denied [the plaintiff's]

motion [for a preliminary injunction]." ConverDyn, 68 F. Supp. 3d at 38.  The Court held that,

[w]hile [the plaintiff's] projected losses [would be] quite significant, if accurate, [the plaintiff] . .

. nonetheless failed to meet this Circuit's stringent standard for establishing irreparable harm."

ConverDyn, 68 F. Supp. 3d at 47.

Despite denying the plaintiff's motion for a preliminary injunction on the basis that the

plaintiff failed to show irreparable harm, the Court nonetheless "discuss[ed] the remaining three

factors in order to provide the parties with a complete understanding of its balance of the four

preliminary injunction factors." Id. at 50 (citation omitted).  The Court stated that it agreed with

the plaintiff "that it [was] likely to prevail on its claim that the 2014 . . . Determination's finding

that the planned transfers [would] have no adverse material impact [was] arbitrary and capricious

in violation of the APA." Id.  However, "[w]ith respect to [the plaintiff's] other claims, . . . the

Court [was] unpersuaded that [the plaintiff was] likely to succeed." Id. at 51.  The Court also

concluded that the balance of the equities and the public interest preliminary injunction factors

did not weigh in favor of issuing a preliminary injunction. Id. at 52–54.

On September 25, 2014, the defendants filed a cross-motion for summary judgment and

opposition to the plaintiff's motion for summary judgment.  Defs.' Cross-Mot. & Opp'n.

"On May 1, 2015, the Secretary . . . issued a determination . . . covering continued

transfers of uranium for cleanup services at the Portsmouth Gaseous Diffusion Plant and for

down-blending of highly-enriched uranium to low-enriched uranium." Excess Uranium

Management: Secretarial Determination of No Adverse Impact on the Domestic Uranium

Mining, Conversion, and Enrichment Industries, 80 Fed. Reg. 26,366, 26,366 (May 7, 2015) (hereinafter "2015 Determination"). The 2015 Determination "covers transfers of up to the equivalent of 2,500 metric tons of natural uranium ("MTU") per year in 2015 and up to the equivalent of 2,100 MTU in each year thereafter." Id. The 2015 Determination expressly states that it "replaces the previous determination issued in May 2014, which covered transfers for these two programs of up to the equivalent of 2,705 MTU per year." Id. (emphasis added); see also id. (emphasis added) (stating that "this determination . . . supersede[s] the 2014 Determination"). Additionally, the 2015 Determination provides that "no further transfers pursuant to the 2014 Determination will take place." Id.

On May 11, 2015, in light of the 2015 Determination's issuance, the Court entered an order directing the plaintiff to "[show cause] . . . why the claims set forth in this action should not be dismissed as moot." May 11, 2015 Order at 2. The plaintiff responded to the Court's May 11, 2015 order on June 2, 2015, contending that its challenge to the defendants' 2014 Determination was not moot. See Pl.'s June 2, 2015 Resp. to the Ct.'s May 11, 2015 Order. The defendants "disagree[d] and [,therefore, represented that they] intend[ed] to file a Motion for Judgment on the Pleadings by June 30, 2015, arguing for dismissal of [the] plaintiff's claims challenging the May 15, 2014 Determination that [allegedly were] rendered moot by the adoption of the . . . 2015 Determination." Defs.' June 10, 2015 Notice to the Ct. at 1–2. Consistent with this response, the defendants filed their motion for judgment on the pleadings on June 30, 2015. Defs.' Mot. for J. on the Pleadings.

On July 9, 2015, the Court issued an order in which it, among other things, declined to address the merits of the plaintiff's September 11, 2014 motion for summary judgment. See July 9, 2015 Order at 2–3. In declining to address the motion, the Court reasoned that "before it

[could] address the merits of this case, it [had to] resolve the threshold issues of the . . . [C]ourt's subject matter jurisdiction and mootness." Id. at 2 (ellipsis in original) (citation omitted). Therefore, the Court denied, without prejudice, both parties' cross-motions for summary judgment and ordered the plaintiff to respond to the defendants' motion for judgment on the pleadings. Id. at 3.

On July 23, 2015, the plaintiff filed its memorandum in opposition to the defendants' motion for judgment on the pleadings. Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings. The defendants then filed their reply on August 8, 2016, Defs.' Reply in Support of Mot. for J. on the Pleadings, and the defendants' motion for judgment on the pleadings is now ripe for resolution.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) permits "a party [to] move for judgment on the pleadings" so long as the motion is made "[a]fter the pleadings are closed—but early enough not to delay trial." "The standard for a motion for judgment under Rule 12(c) is essentially the same standard as a motion to dismiss under Rule 12(b)(6)." Rollins v. Wackenhut Servs., 802 F. Supp. 2d 111, 116 (D.D.C. 2011) (citing, inter alia, Schuchart v. La Taberna Del Alabardero, Inc., 365 F.3d 33, 35 (D.C. Cir. 2004)). Accordingly, when considering a Rule 12(c) motion, "the court must accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmovant." Bowman v. District of Columbia, 562 F. Supp. 2d 30, 32 (D.D.C. 2008). Therefore, "[t]he court should grant a motion for judgment on the pleadings [only] if the movant 'is entitled to judgment as a matter of law.'" Id. (quoting Burns Int'l Sec. Servs. v. Int'l Union, 47 F.3d 14, 16 (2d Cir. 1995)).

# III.   LEGAL ANALYSIS

## A.   The Parties' Arguments

### 1.   The Defendants' Arguments

The defendants assert that their "issuance of [the] 2015 Determination moot[ed] [the] plaintiff's challenge to the 2014 Determination."  Defs.' Mem. at 1.  The defendants therefore conclude that "the Court should grant [their] Motion for Judgment on the Pleadings and dismiss Counts I and II of [the] plaintiff's Complaint as moot."  Id.  Further, the defendants argue that the Court should dismiss Count III because, in the defendants' assessment, "the Court lacks subject matter jurisdiction to consider [Count III] outside a live challenge to a concrete agency action such as a Secretarial Determination."  Id.

The defendants argue that Counts I and II of the Complaint are moot and should be dismissed because "[t]he 2015 Determination unambiguously states that 'the 2014 Determination is replaced by the [2015] [D]etermination . . . and no further transfers pursuant to the 2014 Determination will take place.'"  Id. at 6 (quoting 2015 Determination, 80 Fed. Reg. at 26,366).  The defendants acknowledge that "'voluntary cessation of a challenged practice' does not necessarily render the challenge moot."  Id. at 7 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 169–70 (2000)).  However, the defendants assert that this exception to mootness is inapplicable because "'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  Id. at 7–8 (quoting Laidlaw, 528 U.S. at 189).  From the defendants' standpoint, "there is no reasonable expectation that the agency action constituting the alleged violation . . . will recur" "[b]ecause

the basis for a Secretarial Determination related to the transfer of excess uranium is necessarily particular to conditions in the uranium markets at the time of the Determination." Id. at 8. Furthermore, the defendants assert that "there is no reason for this Court to think that [the defendants] will arbitrarily issue a new determination" because "prior to issuing the 2015 . . . Determination, [the Department] engaged in a time consuming and expensive process [in order to formulate the Determination]." Id. Additionally, the defendants contend that "there is less concern about the recurrence of objectionable behavior" where "the defendant is a government agency." Id. at 9 (citations omitted).

From the defendants' perspective, the "capable of repetition, yet evading review" exception to mootness is likewise inapplicable. Id. at 11 (citing S. Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911)). The defendants note that "[t]o invoke this exception, [the] plaintiff must demonstrate that '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" Id. (alterations in original) (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)). Although the defendants do not address the first prong of this test, the defendants assert that the "same action" requirement is not satisfied because "Determinations on uranium transfer are . . . highly fact-specific" and, accordingly, "there can be no reasonable expectation that [the] plaintiff will again be subject to the same action in the future." Id. at 13 (citation omitted).

Moreover, the defendants note that, under Count I of the Complaint, the "plaintiff contends that [the Department] does not have legal authority to transfer uranium hexafluoride (UF6) . . . and . . . that a practice of valuing the uranium it transfers at roughly the spot market price does not comply with the statutory requirement that [the Department] obtain fair market

value for uranium transferred pursuant to a Secretarial Determination." Id. (citations omitted). The defendants assert that the plaintiff cannot "continue to pursue a challenge to [these] [Department] practices underlying the uranium transfers [allegedly] covered by the 2014 Determination even after the Determination itself has been replaced." Id. The defendants acknowledge that, even where a plaintiff's specific claim has been mooted, the plaintiff "may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe." Id. at 14 (citing City of Houston v. Dep't of Housing & Urban Dev., 24 F.3d 1421, 1429 (D.C. Cir. 1994)). Yet, the defendants assert that, "in the absence of a specific agency action exercising and carrying out these two practices that has caused [the] plaintiff concrete and particularized injury, [the] plaintiff lacks standing." Id. (citation omitted). This is because, in the defendants' assessment, the Department's "legal conclusions about its authority to transfer UF6 and a practice of seeking roughly spot market prices for transferred uranium cannot possibly cause plaintiff any harm in the abstract." Id. Rather, "[i]t is only in the context of an agency action, such as a Secretarial Determination covering those uranium transfers, that these practices could arguably be said to result in any harm to plaintiff." Id. Also, the defendants note that the ripeness doctrine requires courts to evaluate "'both the fitness of the issues for judicial decision and the hardship to the parties from withholding court consideration.'" Id. at 15 (quoting Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967)). In the defendants' opinion, the issues are not fit for judicial resolution because "the determination of whether [the Department's] valuation methods result in it receiving fair market value cannot be intelligently evaluated in the abstract, outside of final agency action." Id. (citation omitted).

The defendants urge the Court to dismiss Count III on various grounds.  First, the defendants assert that the plaintiff lacks standing to challenge the 2013 Policy "[f]or the same reasons that the plaintiff lacks standing to bring a . . . challenge to the two agency policies [discussed in the preceding paragraph]."  Id. at 17.  Second, the plaintiff characterizes the 2013 Policy as a "general statement of policy," id. at 18, and notes that such policies are "not subject to pre-implementation judicial review" under the APA, id. (citing Nat'l Mining Ass'n v. McCarthy, 758 F.3d 243, 251 (D.C. Cir. 2014)).  According to the defendants, in the absence of a "concrete action[] – such as a Secretarial Determination on uranium transfers," there is no policy to implement and, therefore, the plaintiff "cannot maintain a challenge to the [2013 Policy] in isolation."  Id.  Third, the defendants assert that, "[f]or essentially the same reasons, [the] plaintiff's challenge to the 2013 [Policy] in the absence of [an allegedly] non-moot Determination where it is applied or relied upon[] is not ripe for judicial review."  Id. at 19.  Finally, the defendants assert that "[e]ven assuming that [the] plaintiff's challenge to the 2013 [Policy] is unaffected by the mooting of the 2014 Determination, that claim has no merit and the Court can resolve this claim by granting [the] defendants' Motion for Summary Judgment on this issue."  Id.

> 2.      The Plaintiff's Counterarguments

Regarding Counts I and II of the Complaint, the plaintiff argues that the defendants' "decision to supersede the 2014 Determination—[allegedly] made in the face of [the plaintiff's] lawsuit and the Court's adverse ruling—is not enough to moot the lawsuit."  Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 6.  As to the voluntary cessation doctrine, the plaintiff asserts that "it is by no means absolutely clear that [the defendants] would not return to the higher transfer levels authorized by the 2014 Determination if they found it convenient to do so

in the future." Id. at 7.  To bolster its assertion, the plaintiff accuses the defendants of "already us[ing] the uranium transfer program as an extra-budgetary slush-fund to circumvent the Congressional appropriations process," citing documents outside of the pleadings to substantiate this argument. Id.  Furthermore, the plaintiff asserts that the defendants have "offer[ed] no evidence . . . to support their claim[] that the [allegedly] flawed analysis and methodology applied in the 2014 Determination cannot be revived." Id. at 8.  Additionally, the plaintiff expresses skepticism about the defendants' assertion that it is unreasonable to believe that it would issue a new Determination just to avoid judicial review, stating that "that is precisely what [the defendants] did in this case." Id. at 9.  Moreover, the plaintiff asserts that the defendants must show that "interim relief or events [] completely and irrevocably eradicated the effects of the alleged violation," id. at 11 (citing Larsen v. U.S. Navy, 525 F.3d 1, 4 (2008)), and argues that the defendants have not made this showing because "the adverse impacts [of the allegedly unlawful prior transfers] linger in the market and contribute to the still-depressed market for [the plaintiff's] conversion services," Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 11.  Lastly, the plaintiff states that it is "not claiming that [the defendants] will enact a new Secretarial Determination at some indeterminate point that relies on the exact same facts as the 2014 Determination," id. at 12, but rather, that the defendants are "continuing to rely on the same flawed policies and practices when making the 2015 Determination," id.

The plaintiff also contends that the "capable of repetition yet evading review" mootness exception "dooms [the defendants'] motion." Id.  Although the plaintiff acknowledges that "a plaintiff may be less likely to show that it will be subject to the same action" where "the only action challenged is . . . very fact-specific," id. at 13, the plaintiff asserts that "[i]t is well-established that if a plaintiff challenges both a specific agency action and the policy that

underlies that action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot," id. (citing City of Houston, 24 F.3d at 1428). To buttress this assertion, the plaintiff maintains that its "challenge is not just to the ultimate conclusion in the 2014 Determination that transferring 2,705 MTU per year would not have an adverse material impact . . . , but also to the manner in which [the defendants] reached that result." Id. at 14.  Elaborating, the plaintiff states that it challenges the defendants' "practices of balancing the potential harms from the transfers against the benefits of the programs funded by the transfers and comparing the harms from the transfers to other harms affecting the market." Id.[5]

Regarding Count I of the Complaint, the plaintiff asserts that § 2297h–10(d) "bars [the defendants] from transferring material other than natural and low enriched uranium regardless of whether it will have an adverse material impact, and bars [the defendants] from receiving less

---

[5] Additionally, the plaintiff notes that the defendants argued in their motion for judgment on the pleadings "that this case is moot because the Court [allegedly] lacks broad equitable powers to provide any remedy for harms caused by issuance of the . . . 2014 Determination." Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 17.  The plaintiff disputes this argument on the ground that it "is not just seeking to stop or mitigate the ongoing harmful effects of the prior . . . transfers," id., but rather, "to prevent further reliance by [the defendants] on [their allegedly] flawed underlying methodology and to avoid revival of the invalid 2014 Determination," id.  Moreover, the plaintiff contends that, pursuant to its equitable powers, the Court could "enjoin a quantity of uranium transfers going forward to counteract the effects of the quantity transferred unlawfully."  Id. at 18.  According to the plaintiff, the defendants "transferred approximately 2,700 MTU under the auspices of the 2014 Determination," id., and "[e]njoining the next 2,700 MTU . . . will help to remedy this continuing harm by putting the parties in the position they would have been in had [the defendant] not made [these] transfers," id.

The Court declines to address this issue because it is outside of the scope of the defendants' motion for judgment on the pleadings.  For one thing, the defendants did not make this argument in response to the Complaint's allegedly insufficient allegations, but rather, to a position that the plaintiff took in its June 2, 2015 response to the Court's May 11, 2015 order.  See Pl.'s June 2, 2015 Resp. to the Ct.'s May 11, 2015 Order at 6–7; May 11, 2015 Order.  Moreover, this issue is fact-intensive and, therefore, is more appropriately addressed on summary judgment. Cf. McFadden v. Wash. Metro. Area Transit Auth., 949 F. Supp. 2d 214, 222 (D.D.C. 2013) (noting that "question[s] of fact . . . [are] more appropriately addressed on summary judgment").  Thus, while enjoining uranium transfers under a purportedly valid Determination to compensate for transfers made under a repealed Determination would be unusual, cf. Theodore Roosevelt Conservation P'ship v. Salazar, 661 F.3d 66, 79 (D.C. Cir. 2011) ("We are not going to invalidate a valid [agency decision] to remedy the alleged non-enforcement of an [agency decision] which has no current force or effect."), it is premature to address this issue at this time.

than the fair market value of the material regardless of whether it will have an adverse material impact." Id. at 22 (citations omitted).  In the plaintiff's view, "Count I of [the] Complaint makes clear that it is challenging [the aforementioned alleged] [v]iolations of the . . . Privatization Act and [APA], not just a violation of the Secretarial Determination requirement." Id.

As for Count III of the Complaint, the plaintiff asserts that its "claim that [the defendants'] improperly abolished the 10% [l]imit without following requisite notice and comment procedures and did so arbitrarily and capriciously has nothing to [do] with the Secretarial Determination process." Id. at 24.  "As a result," the plaintiff continues, "issuance of the 2015 Determination, or any other new Determination, does not moot the claims." Id. Further, the plaintiff states that the defendants are "currently making excess uranium transfers above the 10% [l]imit and will continue to do so." Id. at 25.  "The ongoing nature of these transfers," the plaintiff concludes, "fatally undermine[s] [the defendants'] claim that there is no final agency action." Id.

**B.    Discussion**

    <u>1.    The Doctrine of Mootness and Its Exceptions</u>

"Article III, § 2[] of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." Genesis Healthcare Corp. v. Symczyk, __ U.S. __, __, 133 S. Ct. 1523, 1528 (2013) (citations omitted).  Therefore, "[i]n order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action." Id. (citation omitted).  "This requirement [of standing] ensures that the Federal Judiciary confines itself to its constitutionally limited role of

adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved."  Id.

"A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  Id.  "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." Id. (citation omitted).  Thus, "[a] case is moot if the judgment . . . will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  Noble v. Sombrotto, 525 F.3d 1230, 1241 (D.C. Cir. 2008) (citation omitted); see also Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 321 (D.C. Cir. 2009) (citation omitted) ("A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party.").

In certain cases, however, "the fact that the specific conduct that gave rise to the case has ceased does not mean that the challenge to the legality of that conduct is moot."  Del Monte, 570 F.3d at 321 (citation omitted).  "A claim for declaratory relief will not be moot if the claim 'fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine.'"  Jackson v. U.S. Parole Comm'n, 806 F. Supp. 2d 201, 205 (D.D.C. 2011) (quoting City of Houston, 24 F.3d at 1429).  Under the voluntary cessation doctrine, it "is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice except when the defendant meets its heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again."  Worth v. Jackson, 451 F.3d 854, 860 (citing, inter

alia, Friends of the Earth, 528 U.S. at 189).  By comparison, "[u]nder the capable of repetition yet evading review exception to mootness, the plaintiff must demonstrate that (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again."  Del Monte, 570 F.3d at 322 (alteration in original).

        a.       Count II

Count II of the plaintiff's Complaint is moot.  Count II exclusively challenges the 2014 Determination, alleging that it violates the Privatization Act's requirement that the Department determine that the "uranium transfers will not have an adverse material impact on the domestic uranium mining, conversion, or enrichment industry."  Compl. ¶ 127; see also id. ¶¶ 128–29 (exclusively challenging the lawfulness of the 2014 Determination).  Yet, the 2015 Determination unequivocally states that "the 2014 Determination is replaced by the determination described below, and no further transfers pursuant to the 2014 Determination will take place."  2015 Determination, 80 Fed. Reg. at 26,366.  Likewise, the 2015 Determination states that it "supersede[s] the 2014 Determination."  Id.  Therefore, the conduct that the plaintiff challenges under Count II (i.e., the 2014 Determination) has ceased, and any ruling on Count II would not affect the plaintiff's rights.  Accordingly, Count II of the plaintiff's Complaint is moot, unless one of the theories that defeats mootness applies.

On the record here, the Court is convinced that Count II is not saved by either the voluntary cessation or the capable of repetition, yet evading review exceptions to mootness. Regarding the voluntary cessation exception, it would be unreasonable to think that the defendants would reissue the 2014 Determination.  The Court agrees with the defendants' assessment that "the basis for a Secretarial Determination related to the transfer of excess

uranium is necessarily particular to conditions in the uranium markets at the time of the

Determination," Defs.' Mem. at 8, and the plaintiff appears to concede that it is "not claiming

that [the defendants] will enact a new Secretarial Determination at some indeterminate point that

relies on the exact same facts as the 2014 Determination," Pl.'s Opp'n to Defs.' Mot. for J. on

the Pleadings at 12. Moreover, where, as here, "the defendant is a government actor—and not a

private litigant—there is less concern about the recurrence of objectionable behavior." Citizens

for Responsibility & Ethics in Wash. v. SEC, 858 F. Supp. 2d 51, 61 (D.D.C. 2012) (collecting

cases). Admittedly, the defendants issued the 2015 Determination in the wake of the Court's

September 12, 2014 Opinion, which held that the plaintiff was "likely to prevail on its claim that

the 2014 Secretarial Determination's finding that the . . . transfers [would] have no adverse

material impact [was] arbitrary and capricious in violation of the APA." ConverDyn v. Moniz,

68 F. Supp. 3d at 50. And, the defendants acknowledge that "this Court's criticism of [the

Department's] reasoning in support of the 2014 Determination . . . was one factor informing [the

Department's] analysis for the new Secretarial Determination that attempts to address the Court's

concerns." Defs.' Mem. at 10. Nonetheless, as a result of the Department's reevaluation, "[t]he

[2015] Determination covers transfers of up to the equivalent of 2,500 metric tons of natural

uranium ("MTU") per year in 2015 and up to the equivalent of 2,100 MTU in each year

thereafter," 80 Fed. Reg. at 26,366, which is a reduction from "the previous determination issued

in May 2014, which covered transfers . . . up to the equivalent of 2,705 MTU per year," id. On

this record, the defendants have carried their "heavy burden of persuading the [C]ourt that the

[2014 Determination] cannot reasonably be expected to [be reissued]." Worth, 451 F.3d at 860

(citing, inter alia, Friends of the Earth, 528 U.S. at 189).

For similar reasons, the "capable of repetition, yet evading review" exception to mootness is inapplicable to Count II.  Under the first prong of this exception, the defendants do not dispute that the 2014 Determination "cannot be fully litigated prior to cessation or expiration," Del Monte, 570 F.3d at 322 (citation omitted), evidently because "Determinations under [§ 2297h-10(d)(2)] remain valid for two years only," ConverDyn, 68 F. Supp. 3d at 40 (citations omitted).  Nevertheless, under the second prong, the Court agrees with the defendants' contention that there is no reasonable expectation that the plaintiff will again be subject to the 2014 Determination.  Defs.' Mem. at 11 (citing Spencer, 523 U.S. at 17).  As the plaintiff seems to acknowledge, Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 13, the defendants' Determinations are "highly fact-specific," Fund for Animals, 460 F.3d at 22.  Therefore, because the 2014 Determination "is highly dependent upon a series of facts unlikely to be duplicated in the future," id. at 23 (citation omitted), Count II "cannot be saved from mootness on the ground that it raises issues or wrongs capable of repetition yet evading review," id. at 22.[6]

The plaintiff responds that it is challenging "both a specific agency action [i.e., the 2014 Determination] and the policy that underlies that action, [and that] the challenge to the policy is not necessarily mooted merely because the challenge to the particular [Determination] is moot." City of Houston, 24 F.3d at 1428 (citations omitted).  The plaintiff describes the alleged policy as the defendants' "practices of balancing the potential harms from the transfers against the benefits of the programs funded by the transfers and comparing the harms from the transfers to

---

[6]  See also Spencer, 523 U.S. at 17 (alterations in original) (emphasis added) (citations omitted) (stating that the "capable-of-repetition doctrine applies only . . . where . . . there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again"); Defs.' Mot. for J. on the Pleadings at 12 (citing cases); see generally 2015 Determination, 80 Fed. Reg. at 26,266 (embodying a fact-intensive analysis); compare 42 U.S.C. § 2297h–10(d)(2) (providing that the Department shall not sell or transfer "natural or low-enriched uranium" unless certain conditions are satisfied), with ConverDyn, 68 F. Supp. 3d at 40 (citations omitted) (noting that "Determinations under [§ 2297h–10(d)(2)] remain valid for two years only").

other harms affecting the market."  Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 14.  But the Complaint is bereft of any allegations regarding such a policy.  <u>See generally</u> Compl. Nevertheless, the plaintiff notes that "[t]he Court recognized this aspect of [the plaintiff's] challenge in its preliminary injunction decision."  Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 14 (citation omitted).  While this representation is certainly correct, the policy reference in the Court's Opinion related to "the 2014 Secretarial Determination," <u>ConverDyn</u>, 68 F. Supp. 3d at 51, which has since been replaced.  The plaintiff further contends that "[t]he 2015 Determination did not reject, and indeed reaffirms and continues, this same flawed approach to evaluating adverse impacts."  Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings at 14 (citation omitted).  Again, however, this unproven "fact" is nowhere in the Complaint, <u>see generally</u> Compl., and courts typically "may not rely on facts outside of the pleadings" when ruling on a motion for judgment on the pleadings, <u>Robinson v. District of Columbia</u>, 403 F. Supp. 2d 39, 47 (D.D.C. 2005).

The plaintiff's argument that the alleged policy described above precludes a mootness defense also fails because this exception applies only to claims for "declaratory relief."  <u>Del Monte</u>, 570 F.3d at 321; <u>see also</u> <u>City of Houston</u>, 24 F.3d at 1429 (emphasis added) (footnote omitted) ("[T]his circuit's case law provides that if a plaintiff's specific claim has been mooted, it may nevertheless seek <u>declaratory</u> <u>relief</u> forbidding an agency from imposing a disputed policy in the future, so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe.").  Here, however, in the Complaint's prayer for relief, the plaintiff's requests for <u>declaratory</u> <u>relief</u> have nothing to do with this alleged policy.  <u>See</u> Compl. at 27–28.  Accordingly, because no exception to mootness applies to the plaintiff's

challenge to the 2014 Determination, the Court dismisses Count II of the plaintiff's Complaint with prejudice.

      b.    <u>Count I</u>

Count I of the Complaint consists of three distinct components.  The first component asserts that the defendants' "2014 Determination is arbitrary, capricious, and unlawful" in violation of the APA.  <u>See</u> <u>id.</u> ¶¶ 120, 122.  The second component asserts that the defendants' "transfers of UF6 further . . . violate[] the . . . Privatization Act [and the APA] because [the defendants allegedly are] not authorized to transfer the conversion or enrichment services component of UF6, only the natural uranium and low enriched uranium component."  <u>See</u> <u>id.</u> ¶¶ 120, 123.  The third component asserts that the defendants' "transfers . . . also violate the . . . Privatization Act because [the defendants allegedly] must receive fair market value for the material[] [and the defendants allegedly value] the material at a price that is below fair market value."  <u>See</u> <u>id.</u> ¶¶ 120, 124.

The first component of Count I is dismissed with prejudice for the reasons stated in Part III.B.1.a of this Memorandum Opinion.  In short, the first component of Count I duplicates the plaintiff's challenge to the 2014 Determination as set forth in Count II, which the Court has already concluded must be dismissed with prejudice.

The Court declines to dismiss, however, the second and third components of Count I.  In its earlier Memorandum Opinion, although the Court held that the second and third components of Count I were "[un]likely to succeed," <u>ConverDyn</u>, 68 F. Supp. 3d at 51, it implicitly recognized the existence of these components of Count I in the plaintiff's lawsuit, <u>see</u> <u>id.</u> at 51–52.  The defendants assert that the plaintiff cannot "continue to pursue a challenge to [these] [Department] practices underlying the uranium transfers [allegedly] covered by the 2014

Determination even after the Determination itself has been replaced." Defs.' Mem. at 13.

However, as the defendants acknowledge, the plaintiff "may . . . seek declaratory relief

forbidding an agency from imposing a disputed policy in the future, so long as the plaintiff has

standing to bring such a forward-looking challenge and the request for declaratory relief is ripe."

City of Houston, 24 F.3d at 1429. Here, the Complaint unequivocally identifies the policies that

the second and third components challenge, see, e.g., Compl. ¶¶ 123, 124, and the plaintiff

expressly seeks a declaration from the Court invalidating these policies, id. at 28. Furthermore,

while the defendants dispute the existence of such policies, Defs.' Reply in Support of Mot. for J.

on the Pleadings at 8–9, their argument implicates facts outside of the pleadings, see id. (citing

inter alia, Pl.'s Mot. for Summ. J.). Moreover, at this time, the defendants' argument is

"inadequately developed" to support an award of judgment on the pleadings. See Westcott v.

McHugh, 39 F. Supp. 3d 21, 31 (D.D.C. 2014) (Walton, J.) (citing Ry. Labor Execs.' Ass'n v.

U.S. R.R. Ret. Bd., 749 F.2d 856, 859 n.6 (D.C. Cir. 1984)). For example, the defendants make

this argument in two paragraphs and fail to cite any cases to support it. See Defs.' Reply in

Support of Mot. for J. on the Pleadings at 8–9; but cf. Westcott, 39 F. Supp. at 31

(acknowledging that the defendant might be able to "file an appropriately supported motion

raising the issue" at a later stage in the proceedings and declining to "address the defendant's

inadequately developed argument at [that] time").

  The defendants contend that, even assuming that the plaintiff sufficiently pleaded the

existence of these two policies, the plaintiff lacks standing to challenge them and that such

challenges are not ripe. This contention lacks merit. As to standing, the defendants argue that

"in the absence of a specific agency action exercising and carrying out these two practices that

has caused plaintiff concrete and particularized injury, [the] plaintiff lacks standing." Defs.'

Mem. at 14 (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  However, the plaintiff adequately identifies both alleged policies in the Complaint, <u>see, e.g.</u>, Compl. ¶¶ 106–17, 123–24, and contends that various harms flow from them, <u>see, e.g.</u>, <u>id.</u> ¶¶ 96, 98–99, 113, 125.  And the defendants have not shown that intervening developments have eliminated these alleged policies.  <u>See</u> Defs.' Mem. at 14–16; Defs.' Reply in Support of Mot. for J. on the Pleadings at 8–9.  Therefore, the plaintiff has sufficiently pleaded the existence of these two policies and the concrete and particularized harm purportedly resulting from them.  The defendants' ripeness argument fails for similar reasons.  The premise of the ripeness argument is that "the determination of whether [the Department]'s valuation methods result in it receiving fair market value cannot be intelligently evaluated in the abstract, outside of final agency action." Defs.' Mem. at 15 (citation omitted).  However, for pleading purposes, the plaintiff has sufficiently identified the agency actions (i.e., the two policies) that are allegedly causing the harm.  Therefore, this argument is also meritless.

     For the foregoing reasons, the Court grants in part and denies in part the defendants' motion for judgment on the pleadings with respect to Count II of the Complaint.  Accordingly, the Court dismisses, with prejudice, the first component of Count II, and declines to dismiss the second and third components of Count II.[7]

     c.    <u>Count III</u>

     Under Count III of the Complaint, the plaintiff challenges the 2013 Policy on two primary grounds.  The first ground is based on the allegation that the 2013 Policy changed a prior policy limiting uranium transfers to 10%, an action that the plaintiff characterizes as "arbitrary

---

[7]  The defendants also assert that the Court "can grant judgment to [the] defendants on these issues for the reasons set forth in the memorandum accompanying [the] defendants' Motion for Summary Judgment."  Defs.' Mem. at 16 (citation omitted).  However, it is premature to address these arguments because the defendants' motion for summary judgment is not currently before the Court.

and capricious, and otherwise not in accordance with law, in violation of the [APA]."  Compl. ¶

134.  The second ground is based on the allegation that the defendants issued the 2013 Policy

"without formal notice and without giving the public the opportunity to comment."  Id. ¶ 134.

In its earlier Memorandum Opinion, the Court held that "it is apparent that . . . the . . .

2013 Plan[] [is a] general statement[] of policy . . .  exempt from notice and comment

requirements under the APA."  ConverDyn, 68 F. Supp. 3d at 52 (citation omitted).  The Court

stands by its prior ruling "due to the non-binding language of the document[], the express

reservation of the Department's ability to revise its p[olicy][], and [the] document['s] failure to

create any rights or impose any obligations," id. (citing Wilderness Soc'y v. Norton, 434 F.3d

584, 595 (D.C. Cir. 2006)), and because the Department "never published a final version of the

[2013] Polic[y] in either the Federal Register or, more significantly, in the Code of Federal

Regulations," Wilderness Soc'y, 434 F.3d at 595–96; see also ConverDyn, 68 F. Supp. 3d at 42

("The 2013 Plan was neither published in the Federal Register nor was it subject to notice and

comment.").

The District of Columbia Circuit has held that "general statements of policy" are not

"subject to pre-enforcement judicial review" under the APA.  Nat'l Mining, 758 F.3d at 251

(citing cases).  Likewise, "general statements of policy" do not "require notice and comment"

under the APA.  Id.

Here, the 2014 Determination was the only conceivable action that the plaintiff alleged to

be enforcing the 2013 Policy.  However, because the 2014 Determination has now been replaced,

the Complaint no longer alleges any action enforcing the 2013 Policy.  Consequently, the first

ground on which the plaintiff challenges the 2013 Policy fails to state a claim upon which relief

may be granted.  Therefore, the Court dismisses Count III with respect to this first ground.

However, this dismissal is without prejudice because, as the defendants seem to acknowledge, "if [the] plaintiff . . . is suffering harm from these practices now, it could . . . amend its complaint . . . [to] challeng[e] the legality of the 2015 Determination."  Defs.' Mem. at 15.

By contrast, with respect to the second ground, the Court dismisses Count III with prejudice.  Because the 2013 Policy is a general statement of policy exempt from the APA's notice-and-rulemaking requirements, the second ground on which the plaintiff challenges the 2013 Policy fails to state a viable claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the defendants' motion for judgment on the pleadings.  Consequently, the Court: (1) dismisses, with prejudice, Count II of the Complaint; (2) dismisses, with prejudice, Count I of the Complaint with respect to first component of this Count; (3) dismisses, without prejudice, Count III of the Complaint with respect to the first ground on which the plaintiff challenges the 2013 Policy; and (4) dismisses, with prejudice, Count III of the Complaint with respect to the second ground on which the plaintiff challenges the 2013 Policy.[8]

**SO ORDERED** this 11th day of May, 2016.[9]

REGGIE B. WALTON
United States District Judge

---

[8]  The preceding analysis is not intended to suggest that the Court would be powerless to find either of the exceptions to mootness discussed above applicable if the circumstances warranted the inference that the defendants were issuing Determinations to preclude the plaintiff from obtaining meaningful judicial review.  As the 2015 Determination will not be valid beyond May 1, 2017, see ConverDyn, 68 F. Supp. 3d at 39 (citations omitted) (stating that Determinations "remain valid for two years only"); 2015 Determination, 80 Fed. Reg. at 26,366 (stating that the 2015 Determination is effective on "May 1, 2015"), it is imperative to proceed as expeditiously toward the resolution of this case as the circumstances will permit.

[9]  An Order consistent with this Memorandum Opinion shall be issued contemporaneously.